This is a motion to vacate an award in favor of the defendant rendered by an arbitration panel pursuant to CGS § 42-179 et. seq., what is commonly called the "Lemon Law", which award was dated June 30, 1997. Plaintiff claims that the arbitration award should be vacated pursuant to CGS § 52-418 because the panel exceeded its powers in reaching its decision:[1]
Plaintiff further claims that the arbitration panel incorrectly interpreted the lemon law by its finding that the defendant did not have to show that there was an existing defect at the time of the hearing. Plaintiff is correct that this is a question of law and is subject to de novo review in accordance with CGS § 42-181 (c) (4).
Plaintiff further claims that there was not substantial evidence in the record to support the factual findings of the arbitration panel, in particular that the door lock problem of which the defendant complained continued to exist at the time of the hearing.[2] Plaintiff also claims that there was not substantial evidence in the record to support the arbitration panel's finding that the door locking defect substantially impaired the defendant's vehicle's use, value and safety.
FACTS
On August 9, 1994, the defendant herein, Maria Garito, hereafter also "Garito," purchased a new 1994 Cadillac Seville, hereafter also "vehicle", from Greenwich Cadillac Oldsmobile, hereafter also "dealer", which vehicle had been manufactured by the plaintiff herein, General Motors Corporation, hereafter also "GM". Following two visits to the dealer for various repairs, Garito returned to the dealer, and for the first time, on October CT Page 13084 26, 1994, complained that when she leaves the vehicle "all doors lock automatically at times". The dealer concluded that the power door locking system was operating normally (see repair order of that date). Garito returned the vehicle on several occasions in November and December 1994 complaining, inter-alia, about the same problem with the automatic door locks. She returned again to the dealer on January 12, 1995, January 20, 1995, February 22, 1995, May 9, 1996, and October 3, 1996 for, inter-alia, the same problems with the automatic door locks. The door lock receiver assembly was replaced on February 22, 1995, but that replacement did not resolve the problem. It was not until the repair of October 3, 1996 that GM finally fixed the problem. The vehicle was brought in for additional repairs on October 29, 1996, December 6, 1996, January 22, 1997 and on March 12, 1997.
On April 29, 1997 Garito filed her request for arbitration, and a hearing was held thereon on June 30, 1997 at which time the arbitration panel found for Garito. The panel found that Garito first brought the vehicle in for repair of the door locks on October 25, 1994 and that "subsequent repair attempts for this defect occurred on: 1/12/95, 1/20/95, 2/22/95 and 5/9/96 . . ." and that this defect "continued to exist after the 4th repair." This is true because by GM's own admissions, successful repair of this defect was not accomplished until October 3, 1996, the sixth repair "attempt".
STANDARD OF REVIEW
The court is well aware that the subject arbitration is mandatory and not consensual, and that, therefore, more judicial intervention is permitted in the former and minimal judicial intervention is permitted in the latter. Every reasonable presumption and intendment in a mandatory arbitration does not have to be indulged in favor of the award as it does in a consensual arbitration. In a consensual and unrestricted arbitration, as for the arbitrator's decision of the legal questions, the courts will not review such questions. See Cashmanv. Sullivan Donegan, P.C 23 Conn. App. 24 (1990) and Bic PenCorporation v. Local No. 134, 183 Conn. 579, 584-5 (1981). In the case at bar, the legal interpretation is a de novo review, and the factual findings are subject to the substantial evidence test; i.e. substantial evidence will be found to exist if the administrative record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue. Nonetheless, the burden of proof rests on the plaintiff, GM, to CT Page 13085 prove the requirements needed to vacate the award.[3]
ISSUES
 I. Whether CGS Sec. 4-179 requires the subject defect to exist at the time of the arbitration hearing?
This is, perhaps, the most important issue, and this particular legal interpretation appears to be a case of firstimpression in Connecticut, there having been no appellate decisions thereon.
GM claims that the Lemon Law requires the defect to be existing at the time of the hearing because it deals with vehicles which do not conform to all express warranties. Therefore, if the vehicle has been repaired prior to the hearing, at that time it does conform to all express warranties.
In order to interpret Sec. 4-179, it should be noted that "a reasonable number of attempts" is defined in CGS Sec. 4-179 (e) as "four or more" and in Sec. 4-179 (f), wherein the defect ". . . is likely to cause death or serious bodily injury", a reasonable number of attempts is defined as "at least twice".
Sec. 4-179 (d) provides in pertinent part:
 "(d) If the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall. . . .".
The significant word here is "after"[4] a reasonable number of attempts. That could mean one day or any time thereafter. Lemon Law relief becomes applicable and the consumer eligible as to this requirement immediately after completion of a reasonable number of unsuccessful attempts, whether they be four or two. There is nothing in this section that requires the defect to be existing at any time other than immediately after the fourth or second failed attempt. As a matter of fact, under this statute, the manufacturer must then provide a remedy as set forth in the statute; i.e. replacement of the vehicle or its return and refund of the purchase price subject to certain conditions. If the manufacturer complies with the law, that's the end of it. If it CT Page 13086 does not comply and/or there is a dispute between the consumer and the manufacturer, then the remedy of a hearing before an arbitration panel is available to the consumer under CGS Sec. 42-181.
GM attempts to bootstrap the provisions of Sec. 42-179 (e) and (f) onto 42-179 (d) so as to include the words "but such nonconformity continues to exist".
CGS Sec. 42-179 (e) and (f) provide in pertinent part:
"(e) It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties, if (1) the same nonconformity has been subject to repair four or more times by the manufacturer or its agents or authorized dealers during the period of two years following the date of original delivery of the motor vehicle to a consumer or during the period of the first eighteen thousand miles of operation, whichever period end first, but such nonconformity continues to exist . . ."
"(f) If a motor vehicle has a nonconformity which results in a condition which is likely to cause death or serious bodily injury if the vehicle is driven, it shall be presumed that a reasonable number of attempts have been undertaken to conform such vehicle to the applicable express warranties if the nonconformity has been subject to repair at least twice by the manufacturer or its agents or authorized dealers within the expressed warranty term or during the period of one year following the date of the original delivery of the motor vehicle to a consumer, whichever period ends first, but such nonconformity continues to exist . . ."
It is clear that "but such nonconformity continues to exist" does not extend or limit the time at which the consumer's problem becomes eligible for a hearing. It is, with nothing more, merely saying that said repair attempts have been unsuccessful. It does not say that the nonconformity must continue to exist at the time of the hearing. By setting forth a full definition of a reasonable number of unsuccessful attempts, it does not change the word "after" in Sec. 42-179 (d) which section sets forth the original basis for liability. Subsections (e) and (f) merely modify Sec. 42-179 (d) by setting forth the definition of reasonable attempts originally mentioned in Subsection (d). The important word "after" and its meaning as described above is not CT Page 13087 changed by the wording of subsections (e) and (f). The statute, read as a whole, clearly states that at any time after 4 or 2 reasonable but unsuccessful attempts, the consumer's problem qualifies on that issue for relief under the Lemon Law.
There are several scenarios described in the memorandum submitted by the intervenor, State of Connecticut, which make little sense under GM's interpretation, but suffice it to say that a plain reading of the entire statute CGS Sec. 7-149, makes it clear that at any time after 4 or 2 reasonable unsuccessful attempts at repair, the consumer's problem becomes eligible for the Lemon Law remedy. GM's interpretation that the defect must exist at the time of the hearing is contrary to the plain wording and meaning of the statute and must fail.
"Where the wording is plain, courts will not speculate as to any supposed intention . . ." Robinson v. Unemployment SecurityBoard of Review, 181 Conn. 1, 6 (1980). "If there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties contend for different meanings".Caldor, Inc. v. Heffernan, 183 Conn. 556, 571 (1981).
Assuming arguendo, that the language is ambiguous, then the court should look at the legislative history of the Lemon Law. The court has and finds that the legislative history supports the court's interpretation herein. The court notes the words of the author of the Lemon Law, Representative John J. Woodcock, on April 20, 1982 in the House of Representatives attached to the state's memorandum, which states, inter-alia:
 "With a lemon car, people are so fed up and disgusted with what they've been through, they're tired of having the dealers and car people try to repair it. They just want to get rid of it. They want to try to minimize the bad investment that they've made. They just want to minimize the nightmare that they've endured."
For all of the above reasons, this court finds that the interpretation of the applicable statutes by the arbitration panel is correct and that, therefore, the panel did not violate CGS Sec. 52-418.
 II. Is there substantial evidence to support the finding that the door lock defect continued to exist after the fourth unsuccessful repair attempt?
CT Page 13088
The simple answer to this question is yes. The record clearly shows from GM's own repair records that Garito brought the vehicle in to the dealer at least four times with complaints about the doors locking automatically. The fact that the dealer couldn't duplicate the problem on October 26, 1994 and, therefore, did nothing to repair it, is irrelevant as to its being counted as a repair attempt.
The problem was repaired on October 3, 1996 so it obviously existed on October 26, 1994 and thereafter. The dealer couldn't find it or made insufficient effort to find it. Garito should not be penalized by the dealer's inability to find or fix the problem. The fourth time was February 22, 1995, and evidence that the first four attempts were unsuccessful is found in the fact that another unsuccessful attempt to repair the problem was made on May 9, 1996. There is, therefore, substantial evidence in the record to show that Garito brought the vehicle in at least four times for this problem after which it continued to exist.
 III. Is there substantial evidence in the record that the door lock defect substantially impaired the use, safety or value of the motor vehicle to the consumer, Garito?
The answer to this question is also yes. Note that the language of the statute uses the word "or" so, therefore, to comply with the statute the arbitrators would have to find only that the defect substantially impaired the use, value or safety of the vehicle for the consumer. Any one of the three criteria, if proven, is sufficient.
The record reflects that Garito brought the vehicle in for warranty repairs twelve times during the first two years of operation. Further, the vehicle was out of service for warranty repairs for eighteen days during this period. The repair history establishes a pattern of defects not only with the door locks but with other areas of the vehicle including the entire electrical system. Both Mr. and Mrs. Garito testified as to the unreliability of the vehicle and substantial lack of use because of the door locking defect. Their testimony has to be given credibility. "In determining whether a finding is supported by `substantial evidence' a court must defer to the [fact finder's] assessment of credibility of the witnesses and to the [fact finder's] right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part", Briggs v.
CT Page 13089State Employee's Retirement Com'n, 210 Conn. 214, 217
(1989)[5].
As for the substantial impairment of the safety of the vehicle, Mr. and Mrs. Garito both testified about their fears of their children being locked in the vehicle. She testified that in the time it took her to get out of the car and walk around the vehicle to get her son out of his car seat, the doors would lock. In bad weather, this could be very dangerous, particularly if she had left her spare keys and her regular keys on the seat of the car. She also testified as to an incident in which the trunk would not close and she called the Cadillac roadside assistance number and was told that it would be some time before they could send help if even that day. On another occasion she and her son were stranded with a dead battery and had to wait four hours for roadside assistance. Locking herself and her son out of the vehicle because of the defect in the locks or having her son locked in the vehicle while she was outside because of the defect in the locks would cause similar safety problems if assistance was unavailable as it was in the other situations.
Therefore, this court finds that there is substantial evidence in the record that the defect substantially impaired the safety of the vehicle. It is a reasonable inference from the facts described in the record that there was a serious impairment of safety. As for value, it is a reasonable inference to draw from the facts that with all of these problems that had gone uncorrected by the manufacturer (as opposed to some small repair shop) that a vehicle in such a defective condition would clearly have less value than one that was operating properly. Therefore, the court finds substantial evidence in the record that the defect of the locks substantially impaired the value of the motor vehicle.
In light of this court's finding that there is substantial evidence in the record to find that said defect substantially impaired the safety of the vehicle, this court also finds that the requirements of Sec. 42-179 (f) have been met in that the defect as described is a condition likely to cause death orserious bodily injury if the vehicle is driven. In that case, the consumer would have the remedy of the Lemon Law after only two unsuccessful repair attempts. Accordingly, Garito would clearly prove that GM violated CGS Sec. 42-179 (d) and (f).
Finally, Sec. 42-181 (c) (4) states in pertinent part, "In reviewing questions of fact, the court shall uphold the award unless it determines that the factual findings of the arbitrators CT Page 13090 are not supported by substantial evidence in the record and that the substantial rights of the moving party have been prejudiced." Although the substantial rights of the moving party have not been raised with any substance in the memoranda of the parties, this court finds that the rights of GM have not been prejudiced. GM has been allowed full opportunity for hearing and review and has been found liable for valid reasons. Therefore, this court find that the substantial rights of the moving party (GM) have not been prejudiced.
For all of the foregoing reasons, GM's Application to VacateArbitration Award in this matter dated July 31, 1997 is denied.
Rittenband, J.